NATURE'S RIVAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 5147.   Promulgated February 24, 1927.

> The entire capital stock of taxpayer corporation was issued
> to its organizers solely for tangible property paid in, and there
> was paid in, at the same time, the good will and patent rights
> of a predecessor corporation, whose capital stock had been pur-
> chased by the organizers of the taxpayer and canceled. *Held*,
> that the value of the good will and patent rights may not be
> included in invested capital.

*E. E. Gore, C. P. A.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

This proceding involves an aggregate deficiency of $1,246.55 for
1919, 1920, and 1921, arising from the refusal of the respondent
to include in invested capital certain good will alleged to have been
acquired by the petitioner, and also from his reduction of invested
capital by the amount of additional tax claimed to be due for
previous years, by reason of the same alleged error.

FINDINGS OF FACT.

The petitioner is an Illinois corporation with its principal place
of business at Chicago.   It is engaged in the business of manufac-
turing corset accessories.

Clarence Mayer and Samuel Yaffe are the organizers and sole
stockholders of the petitioner.   On or about October 8, 1909, they
entered into the following agreement with E. I. Rosenfeld and
Wm. F. Johnson, sole stockholders of the Natures Rival Co., an
Arizona corporation, as follows:

> This agreement entered into this 8th day of October, 1909, between E. I.
> ROSENFELD and WM. F. JOHNSON, parties of the first part, and CLARENCE MAYER
> and SAMUEL YAFFE, parties of the second part, WITNESSETH:
>
> THAT WHEREAS the parties of the first part being the owners of all the
> capital stock in NATURE'S RIVAL COMPANY, a corporation organized under the
> laws of Arizona, and being desirous of selling the same, and the parties of
> the second part being desirous of purchasing said capital stock,
>
> IT IS THEREFORE AGREED that the parties of the first part will assume and pay
> and obtain releases from all liabilities of said Nature's Rival Company to THE
> FIDUCIARY COMPANY, E. W. Pardridge and Mrs. E. Wainright.
>
> The parties of the second part agree that in payment for the above stock
> they will give their notes of even date with this agreement, payable to Wm. F.
> Johnson, Trustee for the aggregate of Twelve Thousand Seven Hundred and
> Fifty ($12,750.00) Dollars, due as follows:

$100.00 due ten (10) days from date;
500.00 " January 1st, 1910;
500.00 " July 1st, 1910;
500.00 " January 1st, 1911;
500.00 " July 1st, 1911;
1150.00 " January 1st, 1912;
1250.00 " July 1st, 1912;
1250.00 " January 1st, 1913;
1750.00 " July 1st, 1913;
1750.00 " January 1st, 1914;
1750.00 " July 1st, 1914;
1750.00 " January 1st, 1915;

said notes to bear interest at the rate of seven (7%) per cent up to and including January 1st, 1912, and six (6%) per cent thereafter until all are fully paid.

It is understood by all the parties hereto that the parties of the second part upon the delivery to them of the stock above named are to make such arrangements with the remaining creditors of said NATURE'S RIVAL COMPANY as will enable said second parties to and that they will at once organize a corporation of the same name under the laws of the State of Illinois with a fully paid up capital stock of ten thousand dollars ($10,000.00), and that all of said capital stock will be delivered to Wm. F. Johnson, Trustee, to be held by him as security on the notes above mentioned, to be released by said Wm. F. Johnson at the ratio in which said notes are paid.

IT IS FURTHER AGREED that the parties of the second part shall have thirty days in which to complete the organization of the last named corporation, and in the event that such organization is not completed by the parties of the second part, the stock hereby transferred to the parties of the second part shall be re-transferred to the parties of the first part with the assets of the said NATURE'S RIVAL COMPANY in the same condition as at the present time and the notes above mentioned returned to the parties of the second part.

(Signed)        E. I. Rosenfeld
(Signed)        Wm. F. Johnson
                Parties of the first part
(Signed)        Clarence Mayer
(Signed)        Samuel Yaffe
                Parties of the second part.

The notes agreed upon in the contract were delivered and were subsequently paid in full.

The Nature's Rival Co. of Arizona owned the right to manufacture certain bust forms under a patent owned by the Nature's Rival Form Co. It had done extensive advertising before the sale of its stock to Mayer and Yaffe, and it possessed lists of its customers. These were its only assets.

The Nature's Rival Co. of Arizona was indebted to the Nature's Rival Form Co. for unpaid royalties. To insure the proper completion of its plans, it entered into a contract on or about October 21, 1909, with W. F. Johnson, as trustee for the Nature's Rival Form Co., providing for the payment of $3,250, to settle the claims of that

company against the Arizona corporation. Notes were issued for that amount and were subsequently paid.

The petitioner was duly organized and Mayer and Yaffe put $10,000 into the business in cash and merchandise, receiving therefor capital stock at par in a like amount, which was deposited with the trustee as provided in the agreement set forth above.

The stock of the Nature's Rival Co. of Arizona was canceled and Mayer and Yaffe turned over to the petitioner all rights and privileges in the good will and patents of that company and the Nature's Rival Form Co. which they had acquired in their individual capacities.

It was agreed that the petitioner should reimburse them as soon as it was financially able to do so, but, in order that its credit might not be impaired, the liability would not be placed on the books.

By 1913 the petitioner had accumulated a surplus of $40,000 and new stock was issued to Mayer and Yaffe.

The outstanding capital stock of the petitioner on March 3, 1917, was in excess of $138,000.

OPINION.

STERNHAGEN: From the evidence it is not possible to decide that the petitioner's invested capital should include any amount for the alleged good will or other intangible property. The statutory invested capital includes intangible property only when " paid in for stock or shares." The evidence clearly shows that the only property paid in for stock or shares at the time of organization was $10,000 cash and merchandise which was paid in for $10,000 of stock. This has been allowed in invested capital by respondent. The evidence is also clear that the intangible property acquired from the Arizona Company and the Form Company was turned in to the petitioner at the same time. It was of such a nature that apart from the business it was of no value and hence it would be idle to argue that it was withheld by the individuals until 1913. And the witnesses testified that it was not withheld but was at once turned in to the new company. This being so, such value as it had could only be a paid-in surplus. If so, it was not within the statute. *Herald-Despatch Co.*, 4 B. T. A. 1096. The $40,000 new stock which was issued in 1913 was for earned surplus which was, of course, within invested capital as such, and a stock dividend gave it no new or additional status under the statute. *Valdosta Grocery Co.*, 2 B. T. A. 727. Neither the original minutes nor those covering the 1913 dividend are in evidence and it is difficult to know the true legal significance of what happened. There is also no clear evidence of how

the 1913 capitalization was accounted for on the books. In this state of the record, and considering what we regard as the probabilities, we must sustain the Commissioner.

> *Judgment will be entered on 15 days' notice, under Rule 50.*